JERRY E. SMITH, Circuit Judge,
dissenting, joined by DeMOSS, Senior Circuit Judge.
By deftly extending the applicable law,[1] Judge Elrod and the en banc majority— with the best of intentions — take a deep bow at the altar of the twin idols of political correctness and social engineering. Because that is a demonstrable departure from reason and experience and imposes an unsustainable burden on private employers in Texas, Louisiana, and Mississippi, I respectfully dissent.
We can take a cue — for better or worse — from the National Football League (“NFL”). Regarding the notion that the venerable Washington Redskins franchise should be forced to change the name of its team because it might pique some American Indians, the NFL Commissioner stated, just a few days ago, that “what we have to do though is we have to listen.... If one person is offended, we have to lis *485 ten.”[2] That is apparently the radical agenda of the EEOC: to dumb down American discourse, at least in the workplace, to avoid any chance that someone might be annoyed.
By bizarre coincidence, just a week after Commissioner Goodell’s statement, it was reported that four current NFL players are participating in an advertising “marketing blitz” to promote men’s use of a brand of moistened toilet wipes similar to Wet Ones.[3] Apparently, and contrary to the position advanced by the EEOC and Kerry Woods, there is nothing shameful— even in the macho world of the NFL— about a man’s openly using that product.
It would not be fair to accuse the en bane majority of adopting — at least not just yet — the position of Commissioner Goodell that we should worry if just one person is offended. But the EEOC appears bent on moving precipitously in that direction.
At oral argument, I asked the EEOC’s attorney to address a hypothetical: A male employee named Joe sometimes wears pink shirts to work, and his supervisor calls attention to him, saying something like, “Look, Joe’s wearing a pink shirt again.” The supervisor never says, to anyone, whether he just does not like pink shirts or, instead, considers them insufficiently masculine, but in fact the supervisor’s motivation is the latter. I asked whether those facts would be sufficient for a finding of liability and damages for discrimination on account of sex, and the EEOC’s lawyer replied “Yes” (if sufficiently severe and pervasive).
I also gave a second hypothetical: The facts are the same, except that the supervisor’s unspoken reason for making fun of Joe is that the supervisor just finds pink shirts to be aesthetically unattractive; Joe has no way of knowing whether the statements are a comment on his manliness. The EEOC’s lawyer answered that those statements would not be actionable under Title VII.[4]
*486 By the EEOC’s reckoning, therefore, an employee can establish liability any time a jury could find that a comment or series of statements is meant to refer to the employee’s failure to conform to some supposed standard of sex-based behavior. Take entertainment preferences, for example: If a supervisor even casually asks a female employee why she watches hunting and fishing shows on television (or if a man is asked why he enjoys the Home & Garden Channel), that could be the basis for a suit that, even if ultimately unsuccessful, would be expensive and disruptive to defend. A supervisor would be afraid to compliment a female employee for how well she lifts heavy boxes in the ware-house or to tell a male subordinate how tastefully he has decorated his office.
The positions taken by the EEOC in toto, and the majority opinion in large part, also emasculate[5] the employment-at-will doctrine[6] that, until now, was alive and well in Texas, Louisiana, and Mississippi. The only way an employer can avoid the real possibility of suit and ultimate damages is to take the position of Commissioner Goodell and make sure that nothing is uttered in the workplace that could possibly offend even a single person. Enlarging the kinds of supervisors’ statements that employees can use to claim damages leads to additional grounds for suit (even on bases other than race, sex, age, or disability) because, possibly, the employer is “unfair” or “mean” or the working environment is “unpleasant” or “oppressive.”[7]
In a world in which comments on Wet Wipes or pink shirts can be considered discrimination on account of sex, the American workplace becomes more like a prison than a place for personal achievement, individual initiative, and positive human interaction; one’s speech is chilled as a condition of keeping one’s job. As Judge Jones accurately observes, the majority opinion “portends a government-compelled workplace speech code” — “a ‘code of civility’ [imposed] on the American workplace.” Instead of resisting such an Orwellian regime, in which Big Brother (in the form of the EEOC or otherwise) constantly monitors the worksite to detect “improper” words and thoughts, the en banc majority fosters it without Congressional mandate.
The hypersensitivity that is blessed unintentionally by the majority nudges the law in a direction that hastens cultural decay and undermines — if even just a little *487 bit — an important part of what is good about private employment in the United States. Societies, and the legal systems of which they are mutually supportive, decline slowly, but ultimately with tragic consequence: “Not with a bang but a whimper.” [8]

. In regard to the law, I concur in the dissents of Judges Jolly, Jones, and DeMoss in their entirety. The purpose of this dissent is not to improve on their excellent legal explications but to expand instead on the practical impact of the majority's sincere but ultimately errant views.

. NBC Sports, “Pro Football Talk,” Sept. 11, 2013, “Goodell on Redskins Name: 'If One Person Is Offended, We Have To Listen,’ ” http://profootballtalk.nbcsports.com/2013/09/ 11/goodell-on-redskins-name-if-one-person-is-offended-we-have-to-listen/.

. The report reads in part as follows:
This has got to be one of the oddest promotions to involve NFL players.... Four NFL linemen have signed to help a small Venice, Calif., company crack a new market — moistened toilet paper — targeted at men. The sector, just 3 percent of the $8.7 billion toilet paper category, is usually aimed at infants and toddlers but the four burly centers are hoping to change that with a product cheekily called "One Wipe Charlies.” The players — the Dallas Cowboys’ Travis Frederick, the Minnesota Vikings’ John Sullivan, the Buffalo Bills’ Eric Wood, and the San Diego Chargers’ Nick Hardwick — will be part of a marketing blitz, entitled “Clean Snap,” to kick off in two weeks. It’s the brainchild of Mike Du-bin, CEO of Dollar Shave, who told The Post: "Most of the centers we approached were game to try this. They are guys not a lot of people are reaching out to.” "We wanted to make something just for men; it’s aspirational: a way to get it done in one,” Dubin said.... "I’ve been using wet wipes for years,” said Dubin, "It[’]s an enjoyable experience”....
Claire Atkinson, "NFLers Line Up To Star in Ads for ... Men’s Toilet Wipes,” NEW YORK POST, Sept. 17, 2013, http://nypost.com/2013/ 09/16/mens-wipes-ads-star-centers-not-tight-ends/.

.The attorney's answer is squarely at odds with the testimony of the EEOC’s expert, Dr. Liza Gold, who, as Judge Jones points out, opined that sexual harassment should be viewed sociologically and from the plaintiff's subjective perspective rather than according to the motive of the alleged harasser. By Dr. Gold's account, therefore, the second pink-shirt hypothetical, in which the supervisor views pink shirts as unattractive but not un *486 manly, presumably would still result in an actionable claim for discrimination on account of sex because the motive of the supervisor (whether spoken or secret) would play no part. If adopted, Dr. Gold's view would impose a "zero-tolerance” regime on the workplace whereby certain comments would be unlawful if they offended any one person and were sufficiently severe and pervasive.

.Maybe I should not use that word because it is much too male-centric and might offend women who feel excluded. So I could say "eviscerate,” but that might upset those who find hunting and warfare offensive. I could use the word "subvert,” but that connotes sinister motive and might offend those who believe that all sincere points of view are morally equivalent.

. As we all know, the employment-at-will doctrine describes "[e]mployment that is usually undertaken without a contract and that may be terminated at any time, by either the employer or the employee.” BLACK'S LAW DICTIONARY 604 (9th ed.2004).

. “Since the mid-1980s, the creation of exception after exception to the at-will employment doctrine has threatened to swallow the rule. Four major categories of exceptions have emerged: (1) statutory exceptions for protected classes; (2) public-policy exceptions; (3) implied-contract exceptions; and (4) exceptions on the covenant of good faith and fair dealing.” Paula G. Ardelean et ah, "The Development of Employment Rights & Responsibilities from 1985 to 2010,” 25 ABA J. LAB. & EMP. L. 449, 452 (2010).

. T.S. Eliot, “The Hollow Men.” (To be hypersensitive, maybe Eliot should have said "The Hollow Persons,” but even that term might offend non-humans because it is anthropocentric.)